Reed, J.,
after stating the facts, delivered the opinion of the court.
The ease is one of peculiar interest, and involves questions that have never been fully determined in this state. The attempted denials in the answer of the allegations in the complaint are inartificially drawn, and some of them are clearly open to the criticism of being “negatives pregnant; but the attempt and intention of the pleader to make- them denials is apparent. Consequently, at this stage of the proceeding, it would probably be wiser to treat them according to the in *434 tention of the pleader than to apply strictly technical rules of pleading. The court below evidently regarded them as denials, tendering issues of fact. I cannot, as urged in argument by the learned counsel of appellant, regard the question of damages as the sole question of fact submitted to the jury. Although it was an equity case, it clearly appears from the instructions of the court, and the acceptance of a general verdict, that all issues of fact made by the pleadings were submitted to the jury for its determination. The prior appropriation of the water of Lone Tree creek to the extent claimed, the construction of the ditch, and the application of the water to his land, appear to have been conceded. If not conceded, they were fully established by the evidence. Hence the first, fundamental and important question to be found by the jury was whether appellant’s rights were invaded, and the volume of water to which he was entitled by priority of appropriation had been diminished by the acts of appellees. The court instructed the jury “that water that percolates through the soil without an evident and well-known channel is regarded as part of the land, and belongs to the owner thereof, and he may make such use of the water as he sees fit, while it remains on, in, or under his land.” It is probably safe to say that it is a matter of no moment whether water reaches a certain point by percolation through the soil, by a subterranean channel, or by an obvious surface channel. If by any of these natural methods it reaches the point, and is there appropriated in accordance with law, the appropriator has a property in it which cannot be divested by the wrongful diversion by another, nor pan there he any substantial diminution. To hold otherwise would be to concede to superior .owners of land the right to all sources of supply that go to create a stream, gardless of the rights of those who previously acquired the right to the use of the water from the stream below. Strictly and technically, the instruction should not have been given. There were no facts in evidence upon which it could be properly based. But, in view of the fact that nearly ail the evidence was directed to the question *435 of whether the water supply was diminished by the acts of the defendants, the finding by the jury that it was not, renders the instruction harmless. The other instruction (No. 4) given by the court appears to embrace, and clearly state, all the law of the case. The refusal of the court to give the instructions prayed by the plaintiff cannot be regarded as error. All that should have been given were, in substance, given by the court.
Streams of the character described in the complaint are frequent throughout the entire arid portion of the continent, and their existence and peculiarities cannot be ignored, being well-defined surface streams with well-defined channels, for long distances, then, for miles, sunken, until uniting with another stream, but having, topographically, all the physical' characteristics of a stream, — a bed, banks, valley, etc., at times of high water, being, its entire length, á running surface stream, and, in low water, or droughts, running short distances, standing in pools, sinking into gravel or loose material in its bed, percolating through or passing under it, and reappearing at some point below, but still delivering at different points a greater or less volume of water, — sometimes at the surface, sometimes much below. It is not necessary to legally define water courses having these peculiar characteristics. They are, as conduits of water, such source of supply as to furnish an appropriator a legal basis for the appropriation of the available water. In the case of a running surface stream the question of appropriation is easy of solution ; but not so in a sunken stream, particularly at a point where the water is an indefinite distance below the surface. Under such circumstances it becomes at once apparent that to appropriate and utilize the water an impervious dam must be constructed, and carried down to an impervious base, to stop and retain 'the subterranean water, and raise it to the ditch. Whenever such adequate provision is made, any act diminishing the quantity that would naturally reach the dam, and add to the supply, up to the limit of the appropriation,— whether by diversion upon the surface, the sinking of wells *436 and using pumps, or otherwise, — would be actionable. The, trouble in the case was in the want of proof. It was in evidence that appellant had constructed a dam across the stream to supply his ditch, but there is nothing in regard to the character of the dam. It may have been only a surface dam, which, although sufficient for running surface water, may have been wholly inadequate for retaining and utilizing the water at any depth below the surface. The efficiency of the dam to stop, retain, and apply the sunken water should have been shown; for -if the water found and taken by the appellees, by sinking wells and pumping, would, in its natural course, have passed under the dam, the available supply could, not have been materially diminished. It should also have been shown that the water taken by appellees was intercepted, and would, by the laws of gravity, following the natural plain Of drainage, have reached appellant’s premises. The testimony was conflicting, vague, and indefinite, based upon the casual observation of different individuals at different times and perhaps under very varying natural conditions. Opinions were substituted to establish physical facts that could have been established by actual tests and practical demonstration. The appellant did not, by proper and competent testimony, make a case entitling him to an injunction restraining the pumping by appellees, and such relief was properly refused. It was shown that appellees had formerly constructed a dam, intercepted surface water, and turned it into their ditch. If such obstruction and diversion bad not been-abated, and appellant’s available supply of water was by such acts diminished, and less than his appropriation, appellees should have been restrained from such interference. The evidence being so vague, conflicting, and indefinite, the verdict of the jury must be sustained, and the decree of the court based upon it,

Affirmed.